[Cite as *LRC Realty, Inc. v. B.E.B. Properties*, 2018-Ohio-2887.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| LRC REALTY, INC., | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-G-0076** |
| B.E.B. PROPERTIES, | : | |
| Defendant, | : | |
| NEW PAR, d.b.a. VERIZON WIRELESS, et al., | : | |
| Defendants-Appellees, | : | |
| - vs - | : | |
| BRUCE BIRD, et al., | : | |
| Plaintiffs-Appellants. | : | |

Civil Appeal from the Geauga County Court of Common Pleas.
Case No. 2014 M 000690.

Judgment: Affirmed in part; reversed in part; remanded.


*James F. Koehler* and *Timothy J. Fitzgerald*, Koehler Fitzgerald LLC, 1301 East Ninth Street, Suite 3330, Cleveland, OH 44114 (For Plaintiff-Appellee).

*James P. Schuck*, Bricker & Eckler, LLP, 100 South Third Street, Columbus, OH 43215-4291; and *Christopher M. Ernst*, Bricker & Eckler, LLP, 1001 Lakeside Avenue, East, Suite 1350, Cleveland, OH 44114-1718 (For Defendant-Appellee New Par, d.b.a. Verizon Wireless).

*Robert T. Dove* and *Robert A. Franco*, 1007 Lexington Avenue, Mansfield, OH 44907 (For Defendant-Appellee 112 Parker Court LLC).

*James B. Rosenthal* and *Ellen M. Kramer*, Cohen Rosenthal & Kramer LLP, 3208 Clinton Avenue, Cleveland, OH 44113 (For Plaintiffs-Appellants).

TIMOTHY P. CANNON, J.

{¶1} Appellants, Bruce and Sheila Bird ("the Birds"), appeal the decision of the Geauga County Court of Common Pleas, granting summary judgment in favor of appellees, 112 Parker Court LLC ("Parker Court") and LRC Realty, Inc. ("LRC Realty"). The trial court's judgment is affirmed in part and reversed in part, and the matter is remanded.

{¶2} On August 27, 2014, LRC Realty filed a complaint (case No. 14M000690) against B.E.B. Properties, Parker Court, and New Par d.b.a. Verizon Wireless ("New Par") "in order to settle and declare the legal rights of the parties hereto to the past and future rental payments owed and to be paid pursuant to the terms of a certain Option to Lease and Lease Agreement dated March 14, 1994 and recorded on April 21, 1994 * * * involving a portion of the real property located at 112 Parker Court, Chardon, OH 44024[.]" LRC Realty sought a declaratory judgment that it "is and will be entitled to be paid the annual installments of rental [sic] owed pursuant to the Lease Agreement for the time period following LRC Realty's acquisition of legal title to the Parker Court Property on January 18, 2013." LRC Realty also sought a money only judgment against B.E.B. Properties and New Par "to recover the annual rental payment to which Plaintiff was entitled in the amount of $23,688.00 which was due and payable on April 1, 2013 pursuant to the Lease Agreement[.]"

{¶3} On September 5, 2014, the Birds filed a complaint (case No. 14M000717) against New Par and LRC Realty. The Birds brought a claim for breach of contract

2

against New Par, alleging the anticipatory breach of a lease agreement whereby New Par was required to make annual payments of rent for the use of a portion of the property located at 112 Parker Court to build and maintain a cellphone tower. The Birds brought a claim for tortious interference with contract against LRC Realty, alleging LRC Realty had "interfered with the contract between the Birds and New Par by instructing New Par to make the April 2014 lease payment, and future payments, to LRC." The Birds sought a declaratory judgment that, "as assignees of the original lessor, B.E.B. Properties," they "are entitled to receive the lease payments throughout the duration of the lease[.]"

{¶4} New Par filed an answer, counterclaim, and cross-claim in both cases. In case No. 14M000690, New Par cross-claimed against the Birds for indemnification in the event New Par was found liable for rental payments made to the Birds. In case No. 14M000717, New Par cross-claimed against LRC Realty for indemnification in the event New Par was found liable for rental payments made to LRC Realty. In both cases, New Par made a counterclaim and cross-claim for interpleader, "so that the Court can fairly adjudicate the rights and obligations of the Birds and LRC and determine who among them is entitled to future rental payments from New Par."

{¶5} The Birds filed answers to New Par's cross-claim and to LRC Realty's complaint. The Birds also raised a combined counterclaim against LRC Realty and cross-claim against Parker Court for reformation of deed, seeking to reform a warranty deed for the transfer of the subject property "to clarify that grantor [Parker Court] did not grant, and grantee [LRC Realty] did not receive, the right to receive the rental payments from the New Par Lease, which rights rest with Bruce and Sheila Bird, as assignees of B.E.B. Properties * * * until the termination of the lease."

3

**{¶6}** Parker Court filed an answer to LRC Realty's complaint and an answer to the Birds' cross-claim. Parker Court also raised cross-claims against New Par and the Birds. The first claim was for a declaratory judgment that "112 Parker Court LLC [was] entitled to receive the annual rental payments owed pursuant to the Lease Agreement for the time period covering each full year 112 Parker Court LLC held title to the Parker Court Property, January 2004 until January 2013." The other claim was for a money only judgment in an amount of "no less than $170,682, which was due and payable over the period of January 2004 until January 2013, pursuant to the Lease Agreement[.]"

**{¶7}** The Birds and New Par each filed an answer to Parker Court's cross-claims.

**{¶8}** LRC Realty filed an answer to the Birds' complaint, an answer to New Par's cross-claim, and a reply to New Par's and the Birds' counterclaims.

**{¶9}** On December 23, 2014, both cases were consolidated under case No. 14M000690.

**{¶10}** On March 6, 2015, the trial court granted New Par's unopposed motion to deposit funds in interpleader, representing the 2015 lease payment of $23,688.00.[1]

**{¶11}** New Par, Parker Court, and LRC Realty, each filed a motion for summary judgment, and the Birds filed a motion for partial summary judgment. All motions were duly opposed. The parties also filed a "Stipulation" with the trial court, by which they stipulated to the authenticity and admissibility of thirteen documents attached thereto, listed below in chronological order:

> 1. Warranty Deed from Geauga Properties, Ltd. to B.E.B. Properties (recorded July 23, 1980)
>
> 2. Option to Lease & Lease Agreement between B.E.B. Properties and Northern Ohio Cellular Telephone Company ["Northern"] (recorded April 21, 1994)

---

1. New Par has also interpleaded the 2016, 2017, and 2018 lease payments.

4

3. Letter from Northern to B.E.B. Properties accepting the option to lease (dated February 28, 1995)

4. Non-exclusive Easement Agreement between B.E.B. Properties and Northern (recorded March 3, 1995)

5. Memorandum of Lease between B.E.B. Properties and Northern (recorded March 3, 1995)

6. Warranty Deed from B.E.B. Properties to Keith R. Baker and Joseph E. Cyvas (recorded April 4, 1995)

7. Assignment from David J. Eardley and Robert Bosler to the Birds of their interest in the lease agreement between B.E.B. Properties and Northern (signed June 22, 1995)

8. Memorandum of Assignment from David J. Eardley and Robert Bosler of their "right, title and interest" in B.E.B. Properties to the Birds (recorded July 12, 1995)

9. Assignment of Lease and Easement Documents from Northern to New Par (recorded January 19, 1999)

10. Warranty Deed from Baker and Cyvas to Magnum Machine Co. (recorded June 7, 1999)

11. Warranty Deed from Magnum Machine Co. to Parker Court (recorded October 31, 2003)

12. Offer to Purchase and Acceptance Agreement between Parker Court and LRC Realty (signed December 14, 2012)

13. Warranty Deed from Parker Court to LRC Realty (recorded January 24, 2013)

{¶12} On May 10, 2016, the trial court rendered its decision in summary judgment, making the following findings, which represent undisputed facts:

Under a recorded 35 year lease, New Par rents space at 112 Parker Court, Chardon, Ohio (the 'property'). The lease requires a single yearly rental payment, made to the property owner on or before the first of April. New Par has never missed a payment and has paid each installment as instructed or ordered. The Birds, LRC, and Parker Court LLC all claim entitlement to rent paid and payable by New Par.

5

On March 3, 1995, a lease and easement between defendant then property owner B.E.B. Properties ('BEB') and New Par's predecessor, Northern Ohio Cellular Telephone Company ('Northern') were recorded.

On March 22, 1995, BEB deeded the property to non-parties Keith Baker and Joseph Cyvas ('Baker and Cyvas') 'free from all encumbrances whatsoever excepting restrictions of record…zoning ordinances…and taxes.' The Northern easement and lease were described in the deed; the right to receive rent was not.

On April 1, 1995, the lease between BEB and Northern commenced.

In June, 1995, two of BEB's three partners assigned all of their partnership interests to the remaining partner and his wife, the Birds. Beginning in 1995 or 1996, Northern paid rent to the Birds. Baker and Cyvas did not complain.

Effective January 1, 1997, Northern assigned its rights to its affiliate, defendant partnership New Par.

On June 2, 1999, Baker and Cyvas deeded the property to their company, non-party Magnum Machine Co. ('Magnum').

On October 31, 1999, Magnum deeded the property to Parker Court LLC.

On January 24, 2013, Parker Court LLC deeded the property to LRC.

On March 15, 2013, New Par paid $23,688.00 in rent for the period from April 1, 2013 through March 31, 2014 to the Birds.

On March 28, 2014, New Par [paid] $23,688.00 in rent for the period from April 1, 201[4] through March 31, 201[5] to LRC.

{¶13} The trial court denied the Birds' motion for partial summary judgment and granted New Par's motion for summary judgment. The court granted in part and denied in part the motions for summary judgment filed by Parker Court and LRC Realty: with respect to New Par, the motions were denied; with respect to the Birds, the motions were granted.

{¶14} The trial court denied the Birds' requested reformation of the deed between Parker Court and LRC Realty on the grounds that they "were never a granting or

6

contracting party." The court stated it was B.E.B. Properties that "owned the property, was the granting party under the deed, and the contracting party under the lease" and that when B.E.B. Properties sold the property to Baker and Cyvas, it did not reserve the right to receive rent under the lease.

{¶15} The trial court ordered the Birds to pay Parker Court the rent they received from New Par ($120,102.00) for the rental periods beginning on April 1, 2007, and ending on March 31, 2013. The court stated the lease required payment to the "landlord," which was described as the owner of the property; the Birds "never owned the property and never improved the property after it was sold to Baker and Cyvas"; and the "recorded deeds and lease unambiguously conveyed the right to receive rent to the property owner." The court did not require the Birds to pay Parker Court for the rent received for the rental periods beginning on April 1, 1995, and ending on March 31, 2007, based on the eight-year statute of limitations for actions brought upon written contracts.

{¶16} For similar reasons, the trial court ordered the Birds to pay LRC Realty the rent they received from New Par ($23,688.00) for the rental period beginning April 1, 2013, and ending on March 31, 2014. LRC Realty was also awarded the money interpleaded by New Par with the clerk of courts for the rental periods beginning on April 1, 2015, and April 1, 2016.

{¶17} Finally, the trial court determined that New Par had paid rent as instructed by the property owner (as had Northern, its predecessor) and, for the future, would pay rent "according to instructions received from the property owner."

{¶18} The Birds filed a notice of appeal from this decision and raise the following four assignments of error, which are consolidated for the purpose of analysis:

> [1.] The trial court committed prejudicial error in granting summary judgment and awarding damages in favor of Appellees 112 Parker

7

Court and LRC Realty, and denying Appellants Bruce and Sheila Bird's motion for summary judgment, holding that Bruce and Sheila Bird, individually and as successors and assigns of B.E.B. Properties, never had any right to receive rent from the cellphone tower lease and must pay all rent received within 8 years of filing the Complaints to past and current owners of the property.

[2.] The trial court committed prejudicial error in granting judgment and awarding damages to Appellees 112 Parker Court and LRC Realty, when the Appellees' direct claims against Appellants Bruce and Sheila Bird for money were equitable in nature, and when derivative liability was not briefed on summary judgment.

[3.] The trial court committed prejudicial error in granting judgment to Appellee 112 Parker Court, and requiring Appellants Bruce and Sheila Bird to pay to Appellee all rent they received from 2007 through 2012, when undisputed evidence established that 112 Parker Court had actual knowledge of the reservation of rent to a prior owner.

[4.] The trial court committed prejudicial error in granting judgment to Appellee 112 Parker Court, and requiring Appellants Bruce and Sheila Bird to pay to Appellee all rent they received from 2007 through 2012, based on R.C. 2305.06, the statute of limitations for written contracts, when the undisputed evidence established no contract between the Birds and 112 Parker Court, written or otherwise.

{¶19} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor."

{¶20} A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "Under this standard, the reviewing court conducts an independent review of the evidence before the trial court and renders a decision de novo,

8

i.e., as a matter of law and without deference to the conclusions of the lower court." *Jackson v. Moissis*, 11th Dist. Geauga No. 2012-G-3070, 2012-Ohio-5599, ¶20 (citation omitted).

**Reformation of the Deed**

{¶21} The Birds argue the trial court erred in denying their claim for reformation. LRC Realty and Parker Court contend the Birds do not have standing to seek reformation of any of the transferring instruments because they never owned the property and because they were not a party to the deed at issue and, therefore, do not have privity of contract.

{¶22} "'It is well-established that "reformation of an instrument is an equitable remedy whereby a court modifies the instrument which, due to mutual mistake on the part of the original parties to the instrument, does not evince the actual intention of those parties."'" *Mong v. Kovach Holdings, LLC*, 11th Dist. Trumbull No. 2012-T-0063, 2013-Ohio-882, ¶20, quoting *Zwaryz v. Wiley*, 11th Dist. Ashtabula No. 98-A-0073, 1999 WL 689940, *2 (Aug. 20, 1999), quoting *Mason v. Swartz*, 76 Ohio App.3d 43, 50 (6th Dist.1991); *see also Greenfield v. Aetna Cas. & Sur. Co.*, 75 Ohio App. 122, 127-128 (12th Dist.1944), citing 35 Ohio Jurisprudence, Section 2, at 145 ("'reformation' is defined as the remedy afforded by courts possessing equitable jurisdiction to the parties and the privies of parties, to written instruments which import a legal obligation to reform or rectify such instruments whenever they fail, through fraud or mutual mistake, to express the real agreement or intention of the parties").

{¶23} "Equity will permit the reformation of a written instrument not only as between the original parties but also as to parties in privity with them." *Mason, supra*, at 49 (citations omitted). "Generally, one is in privity with another if he succeeds to an estate

9

or an interest formerly held by the other * * *, because privity is a succession of interest or relationship to the same thing." *Columbus v. Union Cemetery Assn.*, 45 Ohio St.2d 47, 51 (1976) (citations omitted); *see also Black's Law Dictionary* (10th Ed.2014) (privity of estate: "[a] mutual or successive relationship to the same right in property, as between grantor and grantee or landlord and tenant").

**{¶24}** "[O]ne who is in privity with another because of the transfer of property 'stands in the same shoes' as to the rights of the prior owner in the same property, thereby giving the subsequent owner the same rights and obligation as the original owner had in regard to the property[,]" including "the right to reformation of a deed if the necessary elements are present, that is, fraud, error, omission or mutual mistake." *Berardi v. Ohio Turnpike Comm.*, 1 Ohio App.2d 365, 370-371 (8th Dist.1965).

**{¶25}** The initial relevant transfer of the subject property occurred on March 22, 1995, when B.E.B. Properties sold the property to Baker and Cyvas. That deed, which was recorded on April 4, 1995, transferred the real estate in fee simple. Baker and Cyvas subsequently sold the property to Magnum, which sold it to Parker Court, which sold it to LRC Realty.

**{¶26}** The Birds seek to reform the warranty deed transferring the property from Parker Court to LRC Realty.[2] The Birds lack privity with respect to that transaction, as they do not stand in a mutual or successive relationship to the same rights of property as

---

2. *See* Answer, Counterclaim, and Cross-Claim of Bruce and Sheila Bird as Assignees of Defendant B.E.B. Properties, at ¶18 ("[t]he deed attached hereto as Exhibit 1 [Warranty Deed between Parker Court and LRC Realty] should be reformed to reflect the true intention of the parties and the true state of affairs that existed among the parties at the time of transfer to LRC Realty, Inc."); Motion for Partial Summary Judgment of Bruce and Sheila Bird, Individually and as Successors to B.E.B. Properties, at p. 16 ("the Court should still enter judgment in favor of Bruce and Sheila Bird by reforming the current deed to reflect the clear and unmistakable intent and understanding of 112 Parker Court LLC and LRC Realty, Inc. that their transaction did not include any right to receive the cellphone tower lease payments, which were assigned to Bruce and Sheila Bird").

either Parker Court or LRC Realty.  The Birds claim they are predecessors in interest to Parker Court and LRC Realty, but that claim is untenable.

{¶27}  Because the Birds were not in privity with either Parker Court or LRC Realty, the remedy of reformation was not available to them with respect to the deed transferring the property between these parties.  The trial court properly granted summary judgment against the Birds on their claim for reformation.

**Right to Receive Rent**

{¶28}  The trial court granted New Par's motion for summary judgment and denied Parker Court's and LRC Realty's motions for summary judgment with respect to their claims against New Par.  The trial court held that "Northern/New Par fulfilled its duty to pay rent as instructed" and was "not required to pay past rental installments to property owners who failed to provide payment instructions."  The judgment in favor of New Par has not been challenged on appeal.

{¶29}  The trial court further rendered summary judgment against the Birds and in favor of Parker Court and LRC Realty.  The trial court ordered the Birds to pay $120,102.00 to Parker Court for rent received from New Par during the years 2007 through 2013 and to pay $23,688.00 to LRC Realty for rent received from New Par in the year 2014.  The trial court further held that the Birds were not entitled to future rent payments from New Par.  The trial court stated:

> 'The right to receive rent…arises by privity of estate rather than by contract.  A contract fixes the amount of land, the terms of payment and the manner of the use of the estate, but the right to recover the rent depends upon the ownership of the reversion.' *See Loveless v. Erie R. Co.*, 2 Ohio App. 404, 407 [11th Dist.1914].
>
> Northern leased the property from its owner, BEB.  The lease describes 'landlord' as the property owner and requires rent to be paid to the landlord.

11

After BEB sold the property, Baker and Cyvas, (and then their company Magnum), owned the property, were the landlords, and were entitled to the rent. Baker and Cyvas agreed with BEB and the Birds not to collect the rent. Baker and Cyvas allowed Northern/New Par to pay rent as instructed by BEB and the Birds. These agreements, however, do not override the right of the succeeding property owners to rely on recorded documents and to receive rent according to the recorded lease and deeds.

{¶30} For the following reasons, we disagree with the trial court's holding and its decision to grant summary judgment in favor of Parker Court and LRC Realty on the right to receive the past rent payments.

{¶31} The trial court indicates "the lease describes 'landlord' as the property owner and requires rent to be paid to the landlord." The lease does describe the Landlord as the property owner (therefore, the Landlord had authority to enter into the lease), but it also provides that B.E.B. Properties is "hereinafter referred to as 'Landlord[.]'" Thus, while the "landlord" was also the "property owner" at the time the lease was executed, that designation does not define the "property owner" as a party to the lease. The lease is a contract between B.E.B. Properties and Northern—not between Northern and whomever the property owner happens to be at a given time. Therefore, the trial court is incorrect in concluding that Baker and Cyvas (and then Magnum Machine Co.) became the "landlords" by virtue of becoming the "property owners."

{¶32} The trial court also relies on a case that is entirely distinguishable from the case sub judice, to wit: *Loveless v. Erie Ry.*, 35 Ohio C.C. 87 (11th Dist.1914). *Loveless* involved a dispute between the executor of an estate and the devisee of real estate regarding who was entitled to the rent generated from the property. The issue in *Loveless* was "whether rent paid as consideration for a grant or lease of real estate made in the life time of the testator, but which accrues after the death of the testator, goes to the devisee of the leased premises, or is an asset of the testator's estate." *Id.* at 89. The *Loveless*

12

Court cited the following case law, which the trial court adopted: "The right to receive rent by one from another arises by privity of estate rather than by contract. A contract fixes the amount of land, and the terms of payment, and the manner of the use of the estate, but the right to recover the rent depends upon the ownership of the reversion." *Id.* at 89-90, citing *West Shore Mills Co. v. Edwards*, 24 Ore. 475, 33 P. 987 (1893). Contrary to *Loveless* and *West Shore Mills,* the dispute at issue here does not involve ownership of a reversion, nor is there a dispute about the accrual of rent after the death of a testator. This case law is not applicable here.

{¶33} In their partial motion for summary judgment, the Birds argue that, "[a]t a minimum, the recorded documents indicate that after Baker and Cyvas acquired the property, B.E.B. Properties still retained some interest in the lease, which it assigned to [the Birds], that it involved 'rental payments,' and that the reference to rental payments 'refers to Lease Agreement recorded on April 21, 1994 at Volume 979, Page 1 of the Geauga County Records.'" On this basis, we agree the trial court erred in granting summary judgment in favor of Parker Court and LRC Realty.

{¶34} A recorded leasehold is an encumbrance of land governed by the recording statutes. *See* R.C. 317.08(A)(25) (stating the county recorder shall record in the official records all of the following instruments that are presented for recording, upon payment of the fees prescribed by law: leases, memoranda of leases, and supplements, modifications, and amendments thereto); *see also Tenbusch v. L.K.N. Realty Co.*, 107 Ohio App. 133, 137 (8th Dist.1958) (holding that unexpired leases constitute encumbrances of record). The benefit of a leasehold may be reserved by the grantor when conveying title to a grantee. "It is undisputed that, generally, in the case of a reservation, the whole title to the property conveyed passes to the grantee, but the grantor

13

reserves to himself some benefit of the real estate." *Campbell v. Johnson*, 87 Ohio App.3d 543, 547 (2d Dist.1993).

{¶35} R.C. 5301.25(A) provides:

> All deeds * * * and instruments of writing properly executed for the conveyance or encumbrance of lands, tenements, or hereditaments, other than as provided in division (C) of this section and section 5301.23 of the Revised Code, shall be recorded in the office of the county recorder of the county in which the premises are situated. Until so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument.

{¶36} "Pursuant to this statutory provision, a bona fide purchaser for value is bound by an encumbrance upon land only if he has constructive or actual knowledge of the encumbrance." *Tiller v. Hinton*, 19 Ohio St.3d 66, 68 (1985). "[T]he proper recording of those instruments referenced in R.C. 5301.25(A) serves as 'constructive' notice of that interest or encumbrance to all who claim through or under the grantor by whom such deed was executed." *Thames v. Asia's Janitorial Serv., Inc.*, 81 Ohio App.3d 579, 587 (1992). "Statements and references contained in instruments in his chain of title bind the owner and he is charged with knowledge he would have obtained from reasonable inquiry." *Ferguson v. Zimmerman*, 2d Dist. Montgomery No. 9426, 1986 WL 878, *5 (Jan. 16, 1986), citing *Arnoff v. Williams*, 94 Ohio St. 145 (1916). "These rules rest on the obvious reason, that a searcher can be fairly supposed to be made acquainted with the contents of such deeds only as, in the process of tracing, link by link, his chain of title on the record, necessarily pass under his inspection." *Blake v. Graham*, 6 Ohio St. 580, 584 (1856).

{¶37} There is no dispute between the parties that the warranty deeds at issue, as well as the lease, memorandum of lease and easement agreement, were all recorded. It is also without dispute that these instruments are within LRC Realty's chain of title on

14

the record as they can all be traced, link by link, from B.E.B. Properties to Baker and Cyvas to Magnum to Parker Court and, finally, to LRC Realty.

{¶38} The option to lease and lease agreement between B.E.B. Properties and Northern was recorded on April 1, 1994. The easement agreement and the memorandum of lease agreement between B.E.B. Properties and Northern were recorded on March 3, 1995.

{¶39} The warranty deed from B.E.B. Properties to Baker and Cyvas was subsequently recorded on April 4, 1995, and provides:

> Said premises being subject to the same restriction as recorded in Volume 537, Page 523, Geauga County Records of Deeds which are hereby incorporated and made a part of this deed as if fully written herein.
>
> Further subject to an Option to Lease and Lease Agreement dated March 14, 1994 and recorded April 21, 1994 at Volume 979, Page 1, of the Geauga County Records;
>
> Further subject to a Non-Exclusive Easement filed March 3, 1995 referred to in Volume 1009, Page 56 of Geauga County Records;
>
> Further subject to a Memorandum of Lease filed March 3, 1995, referred to in Volume 1009, Page 50 of Geauga County Records.
>
> And B.E.B. Properties, an Ohio Partnership, the said Grantor, does for its self and its successors and assigns, covenant with the said Grantees, Keith R. Baker and Joseph K. Cyvas, their heirs and assigns, * * * that it will warrant and defend said premises, with the appurtenances thereunto belonging, to the said Grantees, their heirs and assigns, against all lawful claims and demands whatsoever, *such premises further to be subject to the specific encumbrances on the premises as set forth above.*

{¶40} The warranty deed from Baker and Cyvas to Magnum was later recorded on June 7, 1999, and sets forth the same "subject to" language. It warrants and defends said premises "against all lawful claims and demands whatsoever *except as hereinbefore provided.*"

15

**{¶41}** The fact that the language in the deed does not expressly state B.E.B. Properties "reserved the right to receive rent" is not dispositive. "The first rule of deed construction in Ohio is that when the parties' intentions are clear from the four corners of the deed, we will give effect to that intention." *Koprivec v. Rails-to-Trails of Wayne Cty.*, Slip Opinion No. 2018-Ohio-465, ¶29, citing *Hinman v. Barnes*, 146 Ohio St. 497, 508 (1946). The "subject to" language contained within the deed, which is repeated in the deed from Baker and Cyvas to Magnum, clearly indicates that the parties' intention was to reserve the right to receive rent for the benefit of B.E.B. Properties.

**{¶42}** Pursuant to the language in these deeds, both Parker Court and LRC Realty are charged with constructive knowledge of the easement and leasehold encumbrance that was reserved by B.E.B. Properties and properly recorded within their chain of title. An examination of the recorded lease agreement and memorandum of lease would have revealed that B.E.B. Properties was entitled to the rent payments from Northern/New Par. Therefore, Parker Court and LRC Realty took title subject to the specific reservations and were bound by the easement and leasehold encumbrance. Further, no party who subsequently received the property within this chain of title could transfer the right to receive rent, the same being reserved to B.E.B. Properties for the length of the lease with Northern/New Par. The trial court erred in concluding Parker Court and LRC Realty are entitled to claim the past rent profits from that encumbrance.

**{¶43}** The issue that remains is whether the trial court erred in denying summary judgment in favor of the Birds on their claim of the right to receive past and future rent profits. Included within the "Stipulation" exhibits filed by the parties is a copy of the Assignment from Eardley and Bosler, two of the original partners in B.E.B. Properties, to the third partner and his wife, the Birds. The Assignment was signed by all partners on

16

June 22, 1995, in the presence of two witnesses and notarized.  The document provides

the following, in relevant part:

> WHEREAS, said Partnership has entered into a certain Option and Lease Agreement with Tenant for approximately 2.983 acres of land located on B.E.B. Properties' premises for the construction of a transmission and receiving tower and related facilities; and

> WHEREAS, said Option to Lease and Lease Agreement between B.E.B. Properties and Tenant dated March 14, 1994 was recorded on April 21, 1994 at Volume 979, Page 1 of the Geauga County Records along with a Memorandum of Lease filed March 3, 1995 at Volume 1009, Page 50 of Geauga County Records; and

> WHEREAS, B.E.B. Properties has granted unto Tenant a Non-Exclusive Easement for ingress and egress to the Tower site, as referred to above, filed March 3, 1995 at Volume 1009, Page 56 of Geauga County Records; and

> WHEREAS, Assignees are desirous of acquiring Assignor's rights, title and interest in and to said partnership interests as referred to above; and

> WHEREAS, Assignors are desirous of assigning their rights, title and interest in and to said general partnership to Assignees.

> WHEREFORE, in consideration of Assignees paying to Assignors the sum of [$33,333.33] each, said Assignors hereby assign, jointly and to the survivor of the Assignees, all of their rights, title and interest in and to said partnership interests,

> IT IS FURTHER understood and agreed that this assignment shall be reflected in a Memorandum of Assignment to be filed of record on the completion of this transaction.

> FURTHER, this instrument along with the Memorandum of Assignment shall constitute notice to the Tenant that any and all rentals and/or payments, obligations, notices, communications and/or rights or claims which may accrue between Tenant and the Assignees shall henceforth be submitted to the Assignees effective this 6th day of May, 1995.  It is further understood that this instrument shall be evidence of the transfer of any and all claims or rights Assignors may have in and to said partnership interest.

{¶44}  The Memorandum of Assignment was signed, witnessed, and notarized in

conjunction therewith and was duly recorded on July 12, 1995.  It provides, in relevant

17

part, that the purpose of recording the Memorandum "is to give notice to the existence of said assignment and the rights granted therein by the Assignors to the Assignees."

> This instrument shall be further evidence of the transfer of any and all claims or rights Assignors may have in B.E.B. Properties, an Ohio General Partnership, and that all rental payments, notices and/or any type of communication pertaining to said partnership shall henceforth be forwarded to Assignees at the address set forth herein."

Handwritten below this provision is an instruction to "Refer to Lease Agreement recorded on April 21, 1994 at Volume 979, Page 1 of the Geauga County Records."

{¶45} LRC Realty challenged the effectiveness of this assignment in its motion for summary judgment. Because, however, LRC Realty is not entitled to the rent payments, it does not have standing to challenge the assignment between B.E.B. Properties and the Birds. B.E.B. Properties did not raise a challenge to the assignment in the trial court, and the document was included in the Stipulated exhibits submitted to the court. Therefore, the trial court erred in concluding the Birds are not entitled to the past and future rent payments.

{¶46} We further note that the record includes a copy of the Offer to Purchase and Acceptance Agreement that established the terms of LRC Realty's acquisition of the property, which indicates it agreed to take title with such exceptions to title as are approved in writing by LRC Realty. The agreement also provided for remedies if a defect in title was found in the Title Commitment or Survey, to wit: LRC Realty could either accept the title subject to the defect or terminate the agreement. While the answer to this entire conflict is likely contained in those documents, they are not a part of this record and are not necessary for resolution of this appeal.

{¶47} The Birds' assignments of error have merit to the extent indicated.

18

{¶48} The judgment of the Geauga County Court of Common Pleas is affirmed with respect to the Birds' claim for reformation and with respect to all claims against New Par. The judgment is reversed with respect to the damages claim against the Birds in favor of Parker Court and LRC Realty; the trial court erred in granting summary judgment against the Birds.

{¶49} This matter is remanded for the trial court to enter judgment in favor of the Birds, as assignees of the interest in B.E.B. Properties, consistent with this opinion.


THOMAS R. WRIGHT, P.J., concurs,

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.


_____


DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

{¶50} To a very limited degree, I concur in the judgment of the majority. I concur that remedy of reformation is not available to the Birds. I would also reverse and remand the grant of summary judgment, but for reasons and purposes wholly different from those of the majority.

{¶51} The issue that is before this court is whether the Birds/B.E.B. Properties retained the right to receive rent under the lease with New Par following the sale of the property to Baker and Cyvas. Every participant in this litigation, from the Birds to 112 Parker Court to LRC Realty to the trial court and their respective attorneys, has understood that resolution of this issue turns on the following propositions of law: A "covenant to pay rent * * * runs with the land and vests in the assignee of the reversion the right to receive the rents accruing during his ownership of the fee." *Smith v. Harrison*,

42 Ohio St. 180, 185 (1884); *Commercial Bank & Sav. Co. v. Woodville Sav. Bank Co.*, 126 Ohio St. 587, 186 N.E. 444 (1933), paragraph one of the syllabus ("[t]he right to rents and profits of real estate follows the legal title"). The right to receive rent, however, may be preserved in the grantor by a "reservation of rent" in the transferring instrument. *Liberal S. & L. Co. v Frankel Realty Co.*, 137 Ohio St. 489, 501, 30 N.E.2d 1012 (1940).[3]

**{¶52}** No party to this litigation has maintained that the deed transferring the property to Baker and Cyvas contained a reservation of the right to receive rent.

**{¶53}** Incredibly, i.e., without citation to authority or precedent, the majority concludes: "The fact that the language in the deed does not expressly state B.E.B. Properties 'reserved the right to receive rent' is not dispositive." *Supra* at ¶ 41. Instead of an actual reservation of the right to receive rent, the majority holds that "[t]he 'subject to' language contained within the deed [transferring the property to Baker and Cyvas] * * * clearly indicates that the parties' intention was to reserve the right to receive rent for the benefit of B.E.B. Properties." *Supra* at ¶ 41.

**{¶54}** The "subject to" language in question provides that: "B.E.B. Properties * * * does * * * covenant with the said Grantees [Baker and Cyvas] * * * that it will warrant and defend said premises * * * against all lawful claims and demands whatsoever, such premises further to be subject to the specific encumbrances on the premises set forth above [an Option to lease and Lease Agreement dated March 14, 1994 and recorded April 21, 1994 at Volume 979, Page 1, of the Geauga County Records]."

---

3. *See* the trial court's May 10, 2016 Decision ("[a]fter BEB sold the property, Baker and Cyvas, (and then their company Magnum), owned the property * * * and were entitled to the rent"); the Byrds' Assignments of Error and Brief, at 12 ("**The Law is Not in Dispute** / The law holds that rent runs with the land unless it is expressly reserved in a deed."); and LRC Realty's Answer Brief, at 17 ("In Ohio, the long-standing general rule is that a covenant to pay rent runs with the land.").

{¶55} That this boilerplate language should amount to an express reservation of the right to receive rent was certainly not clear to the lower court judge or the litigants in the present case, is not clear to this judge, and, as far as this judge has been able to determine, has not been clear to any court that has considered the significance of language in a warranty deed that the premises are "subject to * * * specific encumbrances." Rather, the plain and ordinary meaning of this language is that B.E.B. Properties' covenant with Baker and Cyvas to warrant the premises against third-party claims acknowledges the existence of certain pre-existing encumbrances.[4] In no way may this language be reasonably construed to mean that B.E.B. Properties was limiting Baker and Cyvas' rights in the subject premises by excepting the right to receive under the lease with New Par. *Thames v. Asia's Janitorial Serv., Inc.*, 81 Ohio App.3d 579, 590, 611 N.E.2d 948 (6th Dist.1992) ("the statement in the deed following the description of the land, that the 'above premises are conveyed subject to' the mortgage, qualifies the estate granted, and that it is to that estate, so qualified, that the warranties apply") (citation omitted); *Davidson Land Co., LLC v. Davidson*, 2011 WY 29, 247 P.3d 67, 74, ¶ 25 (Wy.2011) ("[t]he 'subject to' language simply put the grantee on notice that the warranty was limited by any recorded encumbrances"); *Birdwood Subdivision Homeowners' Assn., Inc. v. Bulotti Constr., Inc.*, 175 P.3d 179, 183 (Id.2007) ("[t]he warranty deed * * * stated that the grant was subject to 'Taxes, easements, restrictions, reservations, assessments and encumbrances as  shown of record, if any,'" which "language simply creates exceptions to the covenants in the warranty deed").

---

4. This conclusion is even more evident when the "subject to" language relied upon by the majority is considered in connection with the immediately preceding language defining the nature of the estate transferred: "B.E.B. Properties * * * does * * * covenant with the said Grantees [Baker and Cyvas] * * * that * * * Grantor is well seized of the above described premises, and it has a good and indefeasible estate in fee simple, * * * and that the same are free from all encumbrances whatsoever, excepting restrictions of record * * *, and that it will warrant and defend said premises * * * [quotation continues as above]."

21

**{¶56}** Yet the majority construes this language, which merely qualifies B.E.B. Properties' warranty that it was conveying a good and indefeasible estate in fee simple, to hold that "no party who subsequently received the property within this chain of title could transfer the right to receive rent, the same being reserved to B.E.B. Properties for the length of the lease with Northern/New Par." *Supra* at ¶ 42. This conclusion cannot, as demonstrated above, rely on the plain and ordinary meaning of the phrase "subject to" but, rather, appears to rest on such language "indicat[ing] that the parties' intention was to reserve the right to receive rent for the benefit of B.E.B. Properties." *Supra* at ¶ 41. The majority thus equates "constructive knowledge of the easement and leasehold encumbrance" with the expressed intent to reserve the right to receive rent.[5] Constructive or actual knowledge of the lease's existence, however, does not imply an intent to retain rights thereunder. "[A] court must analyze the language used in the deed, 'the question being not what the parties meant to say, but the meaning of what they did say, as courts can not [sic] put words into an instrument which the parties themselves failed to do.'" (Citation omitted.) *Am. Energy Corp. v. Datkuliak*, 174 Ohio App.3d 398, 2007-Ohio-7199, 882 N.E.2d 463, ¶ 50 (7th Dist.); *McCoy v. AFTI Props., Inc.*, 10th Dist. Franklin No. 07AP-713, 2008-Ohio-2304, ¶ 8.[6] In the present case, even the majority acknowledges that the deed does not contain an express reservation of rights. Recourse

---

5. Although invariably referred to as a "reservation" of the right to receive rent, "exception" would be the proper term: "A reservation by definition is a 'creation of a new right or interest (such as an easement) by and for the grantor, in real property being granted to another.' * * * An exception is the 'retention of an existing right or interest, by and for the grantor, in real property being granted to another.'" *Am. Energy Corp. v. Datkuliak*, 174 Ohio App.3d 398, 2007-Ohio-7199, 882 N.E.2d 463, ¶ 74 (7th Dist.), quoting Black's Law Dictionary 1333 and 604 (8th Ed.2004) respectively. In practice, "the two terms are often employed 'indiscriminately.'" (Citation omitted.) *Id.* at ¶ 75.

6. *Compare Palmer v. Campbell*, 333 P.2d 957, 959 (Okl.1958) ("there must be, somewhere in the deed, appropriate language expressly reserving some interest in and to the grantor, or the grantor's entire interest passes by a warranty deed to real estate"); *Lipschultz v. Robertson*, 95 N.E.2d 357, 359 (Ill.1950) ("[w]hen the appellees conveyed the property to the city of Chicago by their warranty deed * * *, reserving nothing to themselves, they conveyed the lease and the right to receive unaccrued rentals").

22

to what the majority believes the language of the deed indicates is insufficient to create a reservation of rights where none exists in the deed.

{¶57} Although the majority states its conclusion that B.E.B. Properties reserved the right to receive rent as a matter of law, one suspects the majority actually considers the deed to be ambiguous on this point, as evidenced by speculation elsewhere in the opinion that "the answer to this entire conflict is likely contained in [parol] documents [which] are not a part of this record." *Supra* at ¶ 46. Two points should be made. First, any perceived ambiguity in the language of the deed should be construed in favor of Baker and Cyvas as grantees. *Mong v. Kovach Holding, L.L.C.*, 11th Dist. Trumbull No. 2012-T-0063, 2013-Ohio-882, ¶ 27 (the rule that "an exception or reservation in a conveyance is construed in favor of the grantee rather than of the grantor * * * is so elementary that citation is unnecessary") (citation omitted). Second, if the "subject to" language in the present warranty deed is deemed ambiguous or otherwise subject to novel interpretation, inasmuch as the parties and their attorneys failed to grasp its significance, then the construction of virtually every warranty deed or property transfer in the State of Ohio is vulnerable to judicial reinterpretation.

{¶58} There are legitimate equitable issues regarding 112 Parker Court's and LRC Realty's entitlement to recover damages for the rental payments received by the Birds from New Par which ought to have precluded the granting of summary judgment in the present case. However, to reverse and remand the trial court's grant of summary judgment on the grounds that B.E.B. Properties' warranty of title being subject to specific encumbrances is the functional equivalent of an express reservation of the right to receive rents is not a result in which I can join.

{¶59} For the foregoing reasons, I respectfully dissent.

23